UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JASON B., <br>     *Plaintiff*, <br> <br> v. <br> <br> MARTIN O'MALLEY,[1] Commissioner of <br> the Social Security Administration, <br>     *Defendant*. | CASE NO. 3:22-cv-1662 (KAD) <br> <br> <br> <br> <br> AUGUST 20, 2024 |

## MEMORANDUM OF DECISION
### RE: PLAINTIFF'S MOTION TO REVERSE (ECF NO. 16) AND COMMISSIONER'S MOTION TO AFFIRM (ECF NO. 17)

Kari A. Dooley, United States District Judge:

Plaintiff Jason B. ("Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). He appeals the decision of defendant Martin O'Malley, Commissioner of the Social Security Administration ("Administration"), denying his application for disability benefits pursuant to Title II of the Social Security Act ("Act"). Plaintiff moves to reverse the Commissioner's decision insofar as the Administrative Law Judge ("ALJ") failed to adequately develop the record and that Plaintiff's residual functional capacity determination was not supported by substantial evidence. Alternatively, he seeks a remand for further proceedings before the Commissioner. In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is based upon the correct application of legal standards, and thus should be affirmed. For the reasons set forth below, the Plaintiff's Motion to Reverse, ECF No. 16, is DENIED, and the Commissioner's Motion to Affirm, ECF No. 17, is GRANTED.

**Standard of Review**

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), Commissioner O'Malley is automatically substituted for Kilolo Kijakazi as the named defendant. The Clerk of the Court is requested to amend the caption in this case accordingly.

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations[2]; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform their past relevant work; and (5) if the claimant is unable to perform their past work, the Commissioner must finally

---

[2] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1520(a)(4)(i)–(v); 404.1509. The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. Appx. 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated simply,

"if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

**Facts and Procedural History**

On July 16, 2013, Plaintiff applied for disability insurance benefits[3] pursuant to Title II of the Act,[4] alleging an onset date of December 31, 2011. His claim was initially denied on September 24, 2013 and upon reconsideration on February 21, 2014. Thereafter, a hearing was held before an ALJ on January 5, 2016. On April 27, 2016, the ALJ issued a written decision denying Plaintiff's application for benefits. Plaintiff submitted a request for further review, which the Appeals Council denied on August 7, 2017.

On May 9, 2018, Plaintiff appealed this determination to this Court. *See Borelli v. Berryhill*, No. 3:18-cv-801 (VLB). On September 6, 2019, the Court (Bryant, J.), issued a memorandum of decision remanding the case for further proceedings consistent with the Court's order. *See id.* at ECF No. 28. Meanwhile, on March 7, 2018, Plaintiff had filed a subsequent application for benefits. And on September 24, 2019, a different ALJ found Plaintiff to be disabled as of April 28, 2016.

On remand from this Court, noting the second ALJ's determination that Plaintiff was disabled as of April 28, 2016, the ALJ limited the scope of inquiry to the time period between Plaintiff's alleged onset date of December 31, 2011 to April 27, 2016. At Step One, the ALJ found that Plaintiff has not been engaged in substantial gainful activity during the relevant time period. At Step Two, the ALJ determined that Plaintiff had severe impairments, to wit, lumbosacral spondylosis without myelopathy, sacroiliitis, and obesity. At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically

---

[3] The regulations for disability and disability insurance are found at 20 C.F.R. § 404.900, *et seq.*
[4] 42 U.S.C. § 401 *et seq.*

equals one of the listed impairments in the regulations.[5] At Step Four, the ALJ found that the Plaintiff has the RFC to perform medium work[6] subject to the following limitations: occasionally climbing ramps and stairs but not ladders, ropes, or scaffolds; frequently balance and stoop and occasionally kneel, crouch, or crawl; and avoid concentrated exposure to extreme cold and cannot work at unprotected heights or operate machinery having moving parts which are exposed. At Step Five, the ALJ determined that Plaintiff could perform his past relevant work as a security guard. Accordingly, the ALJ concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) from December 31, 2011 to April 27, 2016. This timely appeal followed.

**Discussion**

Plaintiff challenges the ALJ's development of the administrative record as well as the determination at Step Four that Plaintiff had the RFC to perform his past relevant work as a security guard. In response, the Commissioner argues that the ALJ did all that was necessary to develop the record in light of this Court's remand order and that substantial evidence supports the ALJ's RFC assessment. The Court agrees with the Commissioner.

An ALJ "generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). However, the ALJ "is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 & n. 5 (2d Cir. 1999).

Plaintiff argues that the ALJ inadequately developed the administrative record because the ALJ, on remand, failed to obtain medical records from certain providers. Preliminarily, the Court disagrees that the absence of a few isolated treatment records is sufficient to conclude that the ALJ

---

[5] *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1 (listing qualifying impairments).
[6] Defined in 20 C.F.R. 404.1567(c) as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."

did not develop the administrative record. Plaintiff does not explain how these treatment records would have affected the ALJ's determination that Plaintiff was not disabled, and, indeed, it appears that some of these records are represented elsewhere in the record, albeit in abbreviated fashion. *See* Tr. at 787. Moreover, the ALJ presided over Plaintiff's first hearing, and thus, possessed familiarity with Plaintiff's file. Even without the records cited, the administrative record here was "adequate for [the ALJ] to make a determination as to disability." *Eusepi v. Colvin*, 595 F. Appx. 7, 9 (2d Cir. 2014) (quoting *Perez*, 77 F.3d at 48)).

As to Plaintiff's primary argument that the ALJ failed to develop the administrative record because of the failure to obtain records from certain specific medical providers, the Court is not persuaded. As the transcript of the hearing makes clear, all efforts to obtain the records at issue by Plaintiff's counsel were rebuffed or otherwise unsuccessful. *See* Tr. at 867–868; 1256. Two of the treatment providers had retired, one treatment provider refused to offer a functionality assessment, and Plaintiff's counsel recognized at the hearing that additional efforts would prove fruitless. *See* Tr. at 868 (Plaintiff's counsel stating that "trying to get an RFC from [one of the office's] at all seems to prove fruitless"). The ALJ was not required, as now posited, to issue subpoenas or otherwise independently attempt to obtain these records. *Tankisi v. Comm'n*, 521 F. Appx. 29, 33–34 (2d Cir. 2013) (an ALJ's conclusion is not defective where opinions are requested from medical treatment providers and those providers refused). Nor did the ALJ err by seeking Plaintiff's counsel's assistance in obtaining the records. The ALJ may "discharge a narrow duty to obtain a particular piece of information by asking the claimant for that piece of information specifically." *Rodgers v. Colvin*, No. 3:15-cv-1449 (JCH), 2016 WL 4432678, at *6 (D. Conn. Aug. 17, 2016) (citing *Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 330 (S.D.N.Y. 2010)). Here, the ALJ requested, but was unable to obtain, a discrete set of medical records that had been identified by

6

Judge Bryant as pertinent to the RFC determination. Accordingly, the Court concludes that the ALJ adequately developed the administrative record, to the best of her ability, under the circumstances presented.

Plaintiff also argues that the ALJ erred in formulating his RFC in light of the second ALJ's determination that Plaintiff was disabled,[7] and alternatively, because the ALJ's hypothetical to the vocational expert was inadequate.[8]

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545; 416.945. In formulating an RFC, an ALJ uses "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); *see also Corbiere v. Berryhill*, 760 F. Appx. 54, 57 (2d Cir. 2019) ("[T]he ALJ must weigh all the evidence to make a[n RFC] finding consistent with the record as a whole."). But it is the plaintiff's burden to provide evidence to establish any work-related limitations. *See Smith v. Berryhill*, 740 F. Appx. 721, 726 (2d Cir. 2018).

Plaintiff primarily argues that the ALJ failed to make a specific and substantial inquiry into the demands of Plaintiff's prior work as a security guard as opined upon by the vocational expert. Plaintiff asserts that his pain levels and the impact on his functioning render him unable to perform his prior work. Although Plaintiff testified as to his pain levels and their effect on his day-to-day functioning, the ALJ questioned Plaintiff about his past work as a custodian and a security guard. Tr. at 886–892. Plaintiff testified that as a security guard, he spent most of his shift sitting at the

---

[7] Plaintiff argues that the disability determination is persuasive evidence that the ALJ got it wrong. As Plaintiff himself acknowledges, it is impossible to know on this record what evidence was before the second ALJ, whether the ALJ in this matter reviewed the subsequent decision, or whether the evidence that was before both ALJ's was even the same. *See* ECF No. 16-1 at 13. While it may seem improbable that Plaintiff was considered not disabled on April 27, 2016 and disabled as of April 28, 2016 without an intervening medical event, the Second Circuit has recognized that "two ALJs may permissibly reach different conclusions, even on the same record—which is not the case here—[and] is not probative of anything." *Caron v. Colvin*, 600 F. Appx. 43, 44 (2d Cir. 2015). That their determinations might differ is not itself a reason to find that the ALJ erred in making the RFC determination at issue. This argument is not therefore further addressed.

[8] The hypothetical provided to the vocational expert mirrored the RFC. The challenge to the vocational expert's testimony is therefore a challenge to the RFC itself.

7

front desk signing visitors in and out and had rounds every two hours where he would walk (approximately three hours in an eight-hour shift) but was otherwise sitting or standing. *Id.* He carried a radio, which was five pounds. *Id.* Non-examining state agency physicians opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, could stand or walk for six hours and sit for six hours in an eight hour work day, could occasionally climb ladders, ropes, and scaffolds, stoop, and crawl. Tr. at 215–16; 205–06.[9] The ALJ posited a hypothetical to the VE with the aforementioned limitations. The VE concluded that the individual could perform Plaintiff's past relevant work as a security guard *as he performed it and as it is generally performed*. Tr. at 895 (emphasis added). And, as the ALJ detailed, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and record evidence.[10]

In short, Plaintiff seeks an alternative outcome based on his subjective complaints and view of the record evidence. As to his subjective complaints, while an ALJ is required to consider the claimant's reports of pain, he or she is "not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (finding that the ALJ may consider the claimant's daily restrictions, activities, and efforts to work). "The ALJ has discretion

---

[9] One of the physicians opined that Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. The Court does not find this difference meaningful, as the ALJ is permitted to resolve conflicts in the medical record. "[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). In fact, the ALJ's function is to weigh the evidence as a whole and resolve any conflicts. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

[10] For example, while Plaintiff contended that, due to his lower back pain, he was unable to do household chores, pick up a gallon of milk, use stairs, or bend down without pain, had about 15 bad days a month where he did not get out bed except to use the bathroom, and could not sit down for more than five minutes without needing to stand up, Tr. at 813, Plaintiff's treatment records revealed that he possessed a greater range of movement and pain that could be conservatively treated with physical therapy and injections. Tr. at 814–15. Indeed, the ALJ cited to multiple treatment records which contradicted and therefore undermined the claimed severity of Plaintiff's limitations. *Id.* ("[T]he objective medical evidence during this period, as discussed above, indicates that the claimant had predominately intact physical examination findings, including consistently full musculoskeletal strength and ROM in all extremities.").

to 'arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of pain alleged by the claimant.'" *Borelli v. Commissioner,* 3:18-cv-801 (VLB), ECF No. 28 at 29 (quoting *Marcus v. Califano,* 615 F. 2d 23, 27 (2d Cir. 1979)). Indeed, it is not the role of the Court to review the record *de novo*. *See generally Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Brault*, 683 F.3d at 448 (the Court can reject the Commissioner's findings "only if a reasonable factfinder would have to conclude otherwise") (internal quotation marks and citation omitted). The Court's standard of review is "so deferential that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). Accordingly, the Court finds that the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion to Reverse (ECF No. 16) is DENIED and the Commissioner's Motion to Affirm (ECF No. 17) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of the Commissioner and close this file.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of August 2024.

                                                    /s/ Kari A. Dooley
                                                    KARI A. DOOLEY
                                                    UNITED STATES DISTRICT JUDGE